BOUTALL, Judge.
Appellant, the natural mother of the minor, Leonard Duane Hotchkiss, appeals from a judgment declaring her to have abandoned her child under La.R.S. 9:403. We affirm on a finding that all the statutory formalities for affording appellant notice were strictly adhered to, and that the State carried its burden of proof in this case.
FACTS
In 1976 the appellant, Rose Ann Cook Hotchkiss Cadiere Davis (hereinafter Rose Davis), left her then husband Mr. Cadiere. She entrusted to his care the two small children of their marriage as well as another son, Leonard Hotchkiss, child from a previous marriage and the subject of this abandonment action. Lenny was 7 years old at that time. Very shortly afterwards, the three children were placed in the custody of Mr. and Mrs. Shoemake, some relatives. Evidently Mr. Cadiere was an offshore worker and could not care for three young children adequately.
In September of 1976 custody of Lenny was transferred by court order to the Associated Catholic Charities. The child was already exhibiting some behavioral problems and the Shoemakes could not handle him. The Shoemakes still have custody of the two Cadiere children, thus the present abandonment action deals only with Leonard Hotchkiss.
The State has had custody of Lenny since December of 1979. He was unsuccessfully placed in two foster homes until June of 1982, when he was transferred to the K-Bar-B residential facility, where he lives today. The record reflects that this child, now a teenager, suffers from psychological disorders as manifested by some rather severe behavioral problems. He undergoes individual psychotherapy at the K-Bar-B and also receives tutoring for his schoolwork there. He has not seen or heard from his mother in over seven years, or his natural father since he was approximately six months old.
Appellant Rose Davis contacted the Louisiana office of Human Development in October of 1981 and requested a visit with Lenny. At the recommendation of Lenny’s psychiatrist, that request was denied until appellant could formulate a consistent plan for visitation with her son, and undergo psychiatric evaluation and counseling at the State’s expense. A court hearing, which appellant attended, was had on January 19, 1982. She was ordered by the court to cooperate with the OHD in planning visitation with Lenny on a permanent basis, as well as to undergo psychiatric evaluation, and to pay a modest amount of child support monthly, all in order to further some type of permanent relationship with her son.
Appellant did not comply with any of the aforementioned conditions, and then moved to Germany with her present husband, Sgt. Davis, and their three young children in *882 March of 1982. She left no forwarding address, and was not heard from again until after judgment in the abandonment proceeding had become final.
The judgment was signed on November 19, 1982 and the record contains a letter dated December 1, 1982, written on appellant’s behalf by an Army Legal Assistance Officer, stating that appellant wished to appeal the abandonment adjudication.
ISSUES ON APPEAL
A review of the record indicates three issues which must be dealt with in resolving this appeal. We have arrived at this determination without the benefit of any insights from either of the briefs submitted in this case.
1. Did appellant have notice that her minor son was no longer in her ex-husband’s safekeeping and was instead in State custody?
2. Did the State’s and court-appointed curator’s efforts to notify appellant of the abandonment proceeding against her satisfy the statutory provisions for notice under La.R.S. 9:403(B)?
3. Did the State meet its burden of proof in proving abandonment under La.R.S. 9:403(A)?
NOTICE OF STATE CUSTODY OF THE MINOR CHILD
The record indicates that Rose Davis contacted the Office of Human Development about Lenny in October of 1981. Thus it is certain that at least six months prior to the filing of the abandonment action appellant knew that her child was in the care of the State.
NOTICE OF THE ABANDONMENT ACTION
Ms. Karen Glass, a social worker with the OHD, testified at the abandonment hearing that she was present at the January 1982 support hearing and spoke with Rose Davis in person at that time. Not only was appellant ordered by the judge to meet certain, and very modest, conditions in order to work towards permanent reunion with her son, but in addition Ms. Glass testified that she personally informed appellant at the hearing that should appellant not comply with the court order, the State would file for abandonment.
For reasons which do not appear in the record, appellant Rose Davis did not comply with any part of the January court order. Ms. Glass testified that she again spoke with appellant, by phone, on February 17 and March 11, 1982, attempting to work with appellant to satisfy the order of the court and repeating her warning regarding the State’s intention to file for abandonment. When Ms. Glass called appellant in April of 1982, appellant had moved to Germany and left no forwarding address.
Karen Glass testified that she then had to resort to calling appellant’s aunt, with whom appellant had been residing in Mississippi prior to moving to Germany. She telephoned the aunt once a month for five months, each time informing the aunt of the State’s intent and each time being told that Rose Davis’ whereabouts were unknown.
The abandonment action was commenced by the State on May 3, 1982. La. R.S. 9:403(B) provides a procedure for attempting to contact a parent whose whereabouts are unknown as follows:
... If the parent resides out of the state or cannot be served in the state within ten days after the issuance of process, the court shall appoint an attorney at law as curator ad hoc and legal representative of the parent, and notice of the hearing shall be served upon the curator ad hoc. The curator ad hoc shall make a diligent effort to locate the parent. In the event that the curator ad hoc shall fail to locate the parent within twenty days to notify him of the penden-cy of the proceedings, he shall report his failure to the court whereupon the court shall then direct the department by mail or otherwise to make a diligent effort to locate the parent and inform him of the pendency of the proceedings. The de *883 partment shall report its findings in writing to the court on or before the date fixed by the court which shall not be less than twenty days from service of notice. The department may ask for a further delay which may be granted for good cause. Proceedings insofar as the parent are concerned shall be had contradictorily with the curator ad hoc and be of full force and legal effort against the parent. The date for the hearing may be continued from time to time by the judge for good cause, upon such notice to parties as he may determine.
The record reflects that all the statutory requirements for notice were scrupulously adhered to in this case.
The court appointed three different curators to represent appellant, the first on May 3, 1982. The record contains two certified letters containing citations and petitions, postmarked May 6, 1982 and May 12, 1982, and addressed to appellant’s last known address in Mississippi. They were returned marked “Moved left no address.” The curator then placed a notice in the Times-Picayune, with no success.
Finally pursuant to La.R.S. 9:403(B) the attorneys moved the court to direct the Department of Welfare to attempt to locate Rose Davis. The record contains various correspondence between that department and Mississippi welfare authorities.
Another citation and petition were sent by certified mail to an army base in North Carolina on October 13, 1982 and were returned.
Finally in September of 1982 the Mississippi Welfare Department obtained an address in Germany for appellant. The record contains an affidavit by appellant’s curator that on September 2, November 11, and December 8, 1982 he sent certified letters containing petitions, orders, and judgments to the above-mentioned address in Germany. A xerox of one return receipt, signed by appellant’s present husband, and dated November 29,1982, is attached to the affidavit.
The abandonment action was heard on November 2, 1982, in appellant’s absence and with no communication to her curator. The judgment of abandonment became final on November 19, 1982. Appellant notified her curator that she wished to appeal on December 1, 1982.
It is clear from our recital above that the State’s and the curator’s efforts to locate appellant and provide her with notice of the abandonment proceeding if anything exceeded the statutory requirements for affording notice to a natural parent under La.R.S. 9:403(B).
PROOF OF ABANDONMENT
La.R.S. 9:403(A)(l)(a) and (b) set out the State’s burden of proof in an abandonment action as follows:
A. A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
(l)(a) the child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child’s care and support and have shown an intention to avoid parental responsibility; or
(b) the parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
In its judgment the trial court found that all of the elements of both subsections (l)(a) and (b) quoted above had been proven vis a vis the appellant. From the facts we have detailed in other portions of this opinion there is ample support for the trial judge’s conclusions.
Relative to La.R.S. 9:403(A)(1)(b), we recognize that failure to support, in and of itself, does not necessarily prove intent to abandon. In Interest of Shumaker, 341 So.2d 583 (La.App. 2d Cir.1977). Rather, Louisiana courts look to the entirety of the *884 circumstances in reaching a decision on whether there has been proven an intent to permanently avoid parental responsibility. See In Interest of Vines, 130 So.2d 445 (La.App. 2d Cir.1961).
Our review of the record discloses nothing but appellant’s apparent disinterest in her child’s welfare since 1976, as well as a distressing lack of desire or ability to provide for his care in any manner. Appellant’s neglect of her child’s interests and her apathy towards the abandonment proceeding are as clear a manifestation of intent to avoid parental responsibility as La. R.S. 9:403(A) could require.
For the foregoing reasons, the judgment appealed from is affirmed.
AFFIRMED.