474 So.2d 478 (1985)
STATE of Louisiana
v.
STATE of Louisiana, In the Interest of Sherrie Lee MOORE.
No. CA-3300.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 1985.
*479 Victor M. Ortiz, Earl T. Lindsay, Jr., Clarence L. Richardson & Victor Ortiz, New Orleans, for defendants-appellees.
Clarence L. Richardson, Jr., New Orleans, for appellee.
*480 Beverly B. Lawson, Staff Atty., Dept. of Health & Human Resources, New Orleans, for appellant.
Before LOBRANO, BYRNES and ARMSTRONG, JJ.
BYRNES, Judge.
This appeal arises out of a decision of the Juvenile Court denying the Department of Health and Human Resources' ["Department"] petition for abandonment.

FACTS
Sherrie Lee Moore, a minor child, was four years old when the Department brought this abandonment action for the purpose of allowing her to be permanently adopted. In January, 1981, when Sherrie was approximately one month old, she was placed in the Department's custody by her mother. At that time Mrs. Moore was only sixteen years old. She placed her daughter in State custody due to a harmful family situation wherein Mr. Moore beat Mrs. Moore, threatened to hurt the child, and was involved in drug and alcohol abuse.
The State, through the Department, subsequently brought this action to have the child declared abandoned by both parents. The trial court ruled that the child was abandoned by her father but not by her mother. The court further set up rules for the mother to follow regarding her parental responsibilities. The Department now appeals that portion of the judgment dealing with the mother.

ASSIGNMENTS OF ERROR
Appellant specifies two assignments of error. First, it contends that the trial court was manifestly erroneous in not finding that the child's mother had abandoned her. Second, that the trial court erred in assessing attorney fees for the mother and child respectively, against the Department.

ABANDONMENT
LSA-R.S. 9:403 sets forth the standard of proof required to raise the presumption that a child has been abandoned:
A. A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
(1)(a). the child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child's care and support and have shown an intention to avoid parental responsibility; or
(b). the parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
(2). The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (1)(a) or (1)(b) of this Subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption ...
Due to the harsh consequences of declaring a child to be abandoned by his/her parent(s), the aforementioned statutes are strictly construed. State in the Interest of Foret, 398 So.2d 78 (La.App. 4th Cir.1981) writ denied, 401 So.2d 987 (La. 1981). A decree of abandonment may only be granted where the evidence clearly manifests the parent(s) intention to permanently avoid their responsibilities towards the child and all reasonable doubts should be resolved against such a decree. State In The Interest of Canady, 430 So.2d 265 (La.App. 5th Cir.1983). The burden is on the state to affirmatively prove that the parents have failed to provide support for the child for at least four months. Once this burden is met a presumption that they intended to permanently evade their responsibilities as parents arises. Womack for Declaration of Abandonment, 411 So.2d 1237 (La.App. 3rd Cir.1982). The *481 parents may rebutt his presumption by providing evidence to the contrary.
In State in the Interest of D.L., 457 So.2d 141 (La.App. 2d Cir.1984) the Court cited three factors to be considered in determining if the presumption has been raised:
(1). The nature and extent of contacts between parent and child, including any mitigating circumstances;
(2). The frequency and amount of support payments, also considering any mitigating circumstances; and
(3). The extent to which a parent, who had relinquished custody, had pursued a course of action to regain custody, including any legal action or any cooperation with a state agency.
Of course, none of the three factors listed above, standing alone, is determinative of parental responsibility. A court must necessarily examine each case individually and make a determination based on the totality of the circumstances involved in that case. 457 So.2d at 145.
In this case, the record establishes that the mother visited her child very infrequently. Her last visit was in December of 1983, one month subsequent to the filing of this action. Prior to that she had not visited her daughter since July of 1983. Mrs. Moore testified that she only visited her daughter once in 1982. The uncontradicted testimony further establishes that the mother's exact whereabouts were often unknown and that she moved from place to place, including stops in Arizona and California. Repeated attempts by the Department to contact her and arrange meetings with her daughter were to no avail.
Regarding support, the evidence clearly shows that it was nonexistent. Mrs. Moore testified that she did not know of her obligation to provide support. However, her social workers testified that she was clearly informed by them of this obligation. Although the mother did not have any steady income, she apparently had enough money at some point to purchase an automobile and travel to Arizona and California. Yet she failed to send any support or even token gifts to her daughter, except for providing a few baby clothes for her when she first brought the child to the Department.
Finally, the record is barren of any evidence which might show affirmative action by Mrs. Moore to regain the custody of her daughter. Throughout the three to four year period in which the child was under the care of the Department, Mrs. Moore never settled in one place. She lived in many residences with different people and had a variety of jobs. The Department attempted to give Mrs. Moore a chance to regain custody by setting up parenting classes for her to attend, however, she failed to do so with any regularity. Further, Mrs. Moore did not consistently keep her social worker abreast of her whereabouts and missed at least one hearing regarding her daughter. Finally, at trial Mrs. Moore testified that she was not then living any place suitable to raise her child.
Given these circumstances the Department has established that:
(1). The mother had very few contacts with the child during the three years prior to this action. In fact there was no contact from July 1983 to December 1983 a period of five months;
(2). There were no support payments; and
(3). The mother made no attempts to regain custody of her child, except for stating that she wanted her. She failed to establish a permanent residence and a permanent job. She also did not cooperate with the Department in their attempts to assist her.
We therefore find that the Department affirmatively proved that the mother had failed to provide support for her child for at least four months, thus raising the presumption that she intended to permanently evade her responsibilities as a parent.
Faced with similar circumstances the court in State in the Interest of D.L., supra stated:

*482 [The mother's] misfortunes and low income do not excuse her failure to contact her son for such a long period of time, or to send him even token gifts or support. Furthermore, the fact that she did so little to cooperate with the New Orleans agency ... belies any real interest in actively pursuing a course of action to regain her son's custody and assume parental responsibility. 457 So.2d at 144.
In discussing some mitigating factors the trial court in this case stated:
This is a very, very delicate matter, in that to declare a child abandoned that means that we forever divorce that child from the mother. The Court sincerely believes that she has not done what she was supposed to do as a mother. I think that she had failed miserably in some areas to do those things that she was supposed to do as a mother. On the other hand, the pluses are that the young lady is currently 19 years of age and she was 16 when she gave birth to the child. The mother, in addition to being young, quite candidly is no rhodes scholar. She is a foster child, and she has had no parents to push for her. This is a close case, but I decline to declare the child abandoned. (Tr. p. 119)
While we can sympathize with the hardships Mrs. Moore has had to endure, the record supports the fact that she was given ample opportunity by the Department to evidence her desire to regain custody and assume parental responsibility. She has clearly failed to do so. Thus, there is no evidence to rebutt the presumption that Mrs. Moore "intended to permanently avoid parental responsibilities" LSA-R.S. 9:403. Accordingly, the trial court should have declared the child to have been abandoned by both parents.

ATTORNEY FEES
Appellant contends that the trial court erred in awarding $250.00 each in fees to the attorneys for Mrs. Moore and her daughter. The Department argues that it is not responsible for the fee of these attorneys because they were appointed by the court from the Indigent Defender Program.
The record shows that the Department requested the appointment of a curator to represent the child's parents if they could not be located within a certain period of time. When this period elapsed, curators were appointed by the court. At some point after the curator for Mrs. Moore began to perform his services, she was located and actually appeared and testified at trial, where her curator continued to act as her counsel. We find no indication that the attorney for the mother was appointed under the Orleans Indigent Defender Program as alleged by the state. Rather, there appears to have been a tacit continuance of the curator's role as legal representative for the no longer absent defendant. The judgment of the trial court does not award attorney's fees, but instead refers to "the fees of the curators". Because the mother's curator did perform certain duties in that capacity prior to the mother being located, the trial court properly assessed fees in that regard against the Department. See C.C.P. Art. 5096.
It is well settled that a child in an abandonment proceeding has an absolute right to counsel. LSA-C.J.P. Art. 95. Further, where the parents are either absent or indigent, the child is absolutely allowed a court appointed attorney. C.J.P. Art. 95; In the Interest of Lamm, 423 So.2d 1210 (La.App. 4th Cir.1982) writ denied, 432 So.2d 265 (La.1983).
C.J.P. Arts. 95(C) & (D) provide:
C. If the parents of the child are financially unable to afford counsel, the court shall appoint counsel in accordance with R.S. 15:144 et seq.
D. If the parents of the child are financially able to afford counsel but fail to employ counsel, the court may appoint counsel to represent the child at the expense of the parents in accordance with R.S. 15:148.
Before it can be determined how the attorney representing the child is to be paid, the parents' financial ability to pay *483 must be determined. See State in The Interest of Dillard, 450 So.2d 977 (La.App. 5th Cir.1984). As previously discussed, the mother had sufficient funds to purchase an automobile and travel to Arizona and California. It was therefore not unrealistic to imagine that she might have sufficient funds to pay her child's attorney. Under these circumstances the trial court should have held an indigency hearing to determine who was responsible for the attorney fees of the child.
If after such a hearing the parents are found to be indigent, then the child's attorney should be compensated by the Orleans Indigent Defender Program, under 15:144 et seq. If the parents are not found to be indigent, then they are responsible for paying the fee.

CONCLUSION
The judgment of the trial court is hereby recast to declare the child abandoned by both her parents. The judgment assessing curator fees for the parents against the Department is affirmed. The judgment holding the Department liable for the attorney's fees of the child is reversed and remanded for an indigency hearing and further proceedings in accordance with this opinion and the law.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
LOBRANO, J., Dissents with reasons.
LOBRANO, Judge, dissenting in part.
I respectfully dissent from that part of the judgment which remands this matter for a hearing on the ability of the parents to pay the child's attorney fees. Being realistic, the father of the child was never located, and it is obvious that the mother could not afford an attorney since the curator represented her throughout, we are wasting the lower court's time by requiring a hearing. It is very plain to me that such a hearing would result in the same conclusion by the trial court.